Estate of Mary A. Stowers, Deceased, National Bank of Commerce of San Antonio, Executor v. Commissioner.
Estate of Mary A. Stowers v. Commissioner
Docket No. 11143.
United States Tax Court
1947 Tax Ct. Memo LEXIS 19; 6 T.C.M. (CCH) 1330; T.C.M. (RIA) 47326; December 17, 1947
R. N. Gresham, Esq., 1603 Alamo National Bldg., San Antonio, Tex., for the petitioner. J. Marvin Kelley, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Petitioner contests the Commissioner's determination of a gift tax deficiency of $11,995, to-wit: $5,655 for the year 1942 and $6,300 for 1943. The issues involved are: 1. What was the value on December 28, 1942, of 1,000 shares of stock of the G. A. Stowers Furniture Company which the original petitioner, Mrs. Mary A. Stowers on that date gave to her two daughters? In the gift tax return, Mrs. Stowers valued this stock at $50 a share, but in her petition filed herein she alleged the value to be $35 a share, and that she had erroneously over valued the stock in her gift tax return. The respondent determines *20 its value to be $75 per share. 2. What was the value on December 14, 1943, of 500 shares of the same stock which Mrs. Stowers gave to her two daughters on that date? In the gift tax return filed she alleged the value to be $35 a share, while the Commissioner determined its value to be $91 a share. Findings of Fact The gift tax return herein was seasonably filed with the collector of internal revenue for the first district of Texas by Mary A. Stowers, hereinafter called original petitioner, who died in July, 1946, after filing her petition herein. Thereafter the National Bank of Commerce of San Antonio, having been legally appointed executor of her estate, was by this Court, on motion, substituted as petitioner. Certain facts were stipulated, which we find to be as stipulated, and pertinent parts thereof are herein set forth, together with other facts which we find from oral testimony and exhibits introduced herein. Original petitioner, on December 28, 1942, gave to her daughter Bonnibel Griffith (now Faber) 500 shares and to her daughter Hazel Frances Smith 500 shares of the capital stock of the G. A. Stowers Furniture Company, and on December 14, 1943, she gave to her daughter *21 Bonnibel 250 shares and to her daughter Hazel Frances 250 shares of the capital stock of the same company. In her gift tax return she valued the 1942 gift of 1,000 shares at $50 a share and the 1943 gift of 500 shares at $35 a share and paid the gift tax due thereon. The Commissioner determined the respective values of these stocks to be $75 in 1942, and $91 in 1943. The original petitioner's net gifts (taxable) for the year prior to 1942 aggregated $83,759. G. A. Stowers Furniture Company, hereinafter called the corporation, was incorporated in 1901 by G. A. Stowers (it being the outgrowth of a business started by him in San Antonio, in 1890) and is engaged in the retail furniture business, having six stores all in Texas, to-wit: three stores in San Antonio, and one each in Houston, Cuero and Laredo. Its capital stock in 1942 and 1943 consisted of all common stock, 9,750 shares being outstanding and 250 shares of treasury stock of the par value of $100 a share. The original petitioner and her two daughters, after the gifts herein, owned approximately 70 per cent of the outstanding stock of the corporation, and the remainder was owned by eleven individuals in varying amounts, *22 practically all of whom were officers or directors of the corporation: M. P. Strickland, its then president, owning 1,644 shares; H. S. Affleck (then vice-president, now president) and his wife owning 850 shares and the remaining stockholders owning a much smaller number of shares. The stock of the corporation was never listed on any exchange and there was never any over-the-counter trading therein and no sale of the stock to the public generally. The following is a list of all of the stock sales of the corporation for the years 1935 to 1942 (both inclusive), and we have noted the relationship of the buyer and seller to the corporation at the time the sales were made. Seller
Buyer
R. L. Robertson (former
36 shares sold at $46.08
Margaret C. Holman (6 shs.) employee)
per share
(then man-
2/1/35
ager of a store) and R. P. James (30 shs.)
(advertising manager)
Mrs. O. E. Thomas (widow
10 shares sold at $50 per
Mrs. G. A. Stowers (original petitioner)
of a former store mgr.)
share
9/8/38
N. H. King (former man-
250 shares sold at $48.94
G. A. Stowers Furniture Co.
ager)
per share
10/18/38
Mrs. O. E. Thomas (widow
10 shares sold at $50 per
Mrs. Smith and Mrs. Griffith (daughters
of a former mgr.)
share
of original petitioner)
5/29/40
N. H. King Estate
93 shares sold at $50 per
Mrs. G. A. Stowers
1/27/42
share
N. H. King Estate
48 shares sold at $50 per
E. DeShazo (sec.-treas.)
1/27/42
share
Mrs. O. E. Thomas
5 shares sold at $50 per
Mrs. Smith and Mrs.
5/23/42
share
Griffith
*23 The corporation had a good reputation for dependability and a high degree of good will. Its competition was keen in Houston and San Antonio. Except at Laredo and Cuero it did not own its store buildings, but rented them from the Stowers Estate, the three largest on a month to month lease basis. In 1942 and 1943, due to the war, it was difficult to buy furniture, its stock was being depleted, labor was scarce and price controls were adversely affecting business. The management of the corporation was vested in two persons approximately 70 and 65 years of age, about ready to retire, and the only trained and intended under-study, Harry Afflect, (now president) was then absent in the armed forces. The balance sheets of the corporation as of December 31, 1942, and 1943, were as follows: DECEMBER 31, 1942
ASSETS
Current
Cash
$279,955.64
Accts. Rec.
$929,372.63
Less Res.
107,762.12
821,610.51
Mdse.
622,245.83
$1,723,811.98
U.S. BONDS
Series "C" Tax Notes
$
Fixed
Real Estate
$ 75,771.08
Buildings
55,698.20
Improvements
691.36
Automobiles
10,978.52
Furniture & Fixtures
6,783.55
149,922.71
Deferred
Prepaid Insurance
$ 3,828.29
Prepaid Taxes
1,454.17
5,282.46
$2,004,017.15
DECEMBER 31, 1943
ASSETS
Current
Cash
$697,524.96
Accts. Rec.
$694,629.14
Less Res.
71,148.77
623,480.37
Mdse.
449,781.55
$1,770,786.88
U.S. BONDS
Series "C" Tax Notes
$151,000.00
Series 1944 Treas. Cert.
70,000.00
Post War Credit
2,867.95
223,867.95
Fixed
Real Estate
$ 76,521.08
Buildings
52,262.73
Improvements
482.82
Automobiles
7,044.52
Furn. & Fix.
6,145.69
142,456.84
Deferred
Prepaid Insurance
$ 5,096.21
Prepaid Taxes
554.67
5,650.88
$2,142,762.55
*24 DECEMBER 31, 1942
LIABILITIES
Current
Accts. Pay.
(Mdse.)
$ 58,317.60
Notes Pay.
(Indiv.)
$122,878.68
(Miscl.)
31,000.00
Accts. Pay.
(Miscl.)
45,531.13
City Bills
28,729.84
$ 286,457.25
Accrued Accounts
Taxes, Federal, State &
Local
$205,785.21
Interest
155.00
205,940.21
Net Worth
Capital Stock
$1,000,000.00
Treasury Stock
25,000.00
$ 975,000.00
Capital Surplus
12,765.34
Undivided Profits
523,854.35
1,511,619.69
$2,004,017.15
DECEMBER 31, 1943
LIABILITIES
Current
Inv. Accounts
$ 60,332.31
Notes Payable
98,537.69
Accts. Miscl.
13,270.99
City Bills
35,593.12
$ 207,734.11
Accrued
Taxes, City State and
Federal
$ 319,108.47
Interest
1,006.13
320,114.60
Net Worth
Capital Stock
$1,000,000.00
Treas. Stock
25,000.00
$ 975,000.00
Capital Surplus
12,765.34
Undiv. Profits
627,148.50
1,614,913.84
$2,142,762.55
The respective sales and net profits for the years 1942-1943 of the corporation's six stores are as follows: 1942
1943
Net Sales
Net Profits
Net Sales
Net Profits
Stowers, S. A.
$ 617,044.41
$ 25,494.43
$ 628,033.61
$ 29,527.03
King Furn., S. A.
520,552.14
11,046.13
565,211.66
20,346.91
Western, S. A.
75,159.94
2,653.05
73,115.33
2,816.94
Stowers, Hou.
1,191,362.76
47,724.39
1,246,466.82
57,814.24
Stowers, Cuero
56,271.17
1,760.30
83,941.96
6,532.58
Stowers, Laredo
80,306.61
2,044.28
93,377.77
5,556.28
Hdq. Miscl.
16,148.71
11,146.47
$2,540,697.03
$106,871.29
$2,690,147.15
$133,740.45
*25 The corporation's net sales, book value per share, net earnings per share and dividends paid from 1929 to 1943, inclusive, were as follows: Net Sales
(Annual
Dividends
Year
Approximate)
Book Value
Net Earnings
Paid
(000's omitted)
per share
per share
per share
1943
$2,690
$165.63
$13.72
$5.00
1942
2,541
155.04
10.96
5.00
1941
2,684
149.08
12.47
3.00
1940
2,222
139.61
10.72
3.00
1939
2,196
133.77
5.80
3.00
1938
2,074
130.97
5.13
3.00
1937
2,237
126.84
8.01
5.00
1936
2,292
123.83
6.05
5.00
1935
1,812
122.78
3.87
0.00
1934
1,507
118.92
1.50
0.00
1933
1,215
117.41
6.02(d)
0.00
1932
1,159
123.43
31.20(d)
0.00
1931
1,729
155.74
12.47(d)
0.00
1930
2,213
168.21
7.29(d)
0.00
1929
2,559
176.26
4.24
0.00
The fair market value of the stock of the corporation in question, to-wit: 1,000 shares, on December 28, 1942, was $60 per share, and the 500 shares on December 14, 1943, was $70 per share. Opinion It is always difficult to determine the value of stock in a closely held corporation such as this, where its shares are not listed on any exchange nor dealt in over the counter, *26 and for which there is no market. Petitioner evidently found it so, for three different valuations are given by her in valuing the shares she gave away in December, 1942, to-wit: $50 a share valuation in her gift tax return; $35 a share in her petition and $39 a share on the trial and also in the brief (that being the value as determined by her expert witness). As to the value of the shares given away in December, 1943, in petitioners' tax return and in her petition for redetermination a $35 a share valuation is alleged, while at the trial and in petitioner's brief its value is placed at $63 a share (expert's valuation). Respondent on the trial had no expert or other witness testify as to the specific value of the stock, and his position is that petitioner has failed to show error in respondent's determination of a value of $75 a share for the 1942 gift and $91 a share for the 1943 gift. From these several figures and wide variation in values we are called upon to determine from the stipulation and the evidence and under the regulations the value of the stock in question for gift tax purposes. The only evidence giving a specific value of the shares in dollars and cents appears *27 in: (a) sales of the stock and prices received therefor, and (b) the values testified to by petitioner's expert valuation witness. There were seven different sales of this stock from 1935 to 1942, inclusive, aggregating 452 shares, and the price paid per share in five of the sales was $50, and in the other two $46.08 and $48.94. Since these sales were all made between either former employees as sellers and present employees as buyers, or between former employees as sellers and the corporation or principal stockholders as buyers, it is conceded by the parties that such sales should not be here determinative of the value of the stock, since it is thought that the price of such sales may have been more or less determined by the management, and the sales could not, therefore, be strictly regarded as having been made at arm's length. We agree. We cannot agree, however, with the contention of parties that the prices at which these sales were made "should have no bearing upon the stock valuation." We think the price at which these sales were made should not be entirely excluded in determining value here, but should be considered with other evidence in determining the fair market value *28 of the stock. The value of the stock as reflected by these sales is not pleasing to the petitioner, since they are higher than petitioner now claims the stock value to have been at the time of the 1942 gift, and the respondent is likewise displeased, since they are much lower than the stock value claimed by him, both as to the 1942 and 1943 gifts. We are not interested in sustaining the contention of either party, but in ascertaining the fair value of the stock, and we think the prices at which these sales were made shed some light on its value. The price which a buyer would pay for stock would likely depend primarily on its book value, earning capacity, dividends, etc., but he would also consider and be affected to some extent by its selling price over a seven year period, whether in a closed or open market. The petitioner's expert valuation witness testified that the value of the stock as of December 28, 1942, was $39 per share, and as of December 14, 1943, $63 a share. He told at length and in detail the various methods of analysis employed by him in reaching these figures. Apparently he had made an extended examination, including the general and economic factors then prevailing *29 in the midst of war as related to the furniture business in general and of this corporation in particular. He considered and discussed the economic condition of the corporation in 1942 and 1943 and for previous years, its book value, earning capacity, dividends paid, etc., and recited and considered the favorable and unfavorable factors affecting the corporation, and on the whole he gave a rather complete summary of all the factors involved and which he had considered in determining the value of the stock. However, there can be no mathematical accuracy in applying these favorable and unfavorable factors in determining the price of a stock. There is no formula by which a dollar and cent valuation may be deduced therefrom. After all, the conclusion reached is theoretical and a matter of opinion about which even experts may differ, and while the expert's analysis, reasons and discussion are helpful in determining value, we are not bound to accept his conclusions as final or determinative of the issue, but the responsibility is ours to determine from all the evidence, expert and otherwise. Section 86.19 of Regulations 108, containing valuation criteria many times approved by this and *30 other courts, provides: "(a)… The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * *
"(b) If actual sales or bona fide bid and asked prices are not available, then, * * * in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. * * *" Applying the definition of "value" contained in the regulations, we have found all of the facts required by the regulations, together with all other facts we deem relevant in having a bearing upon the value of the stock in question. There are factors contained in our findings affecting both favorably and unfavorably the value of the stock, which we deem unnecessary here to repeat, but all of which have been carefully weighed and considered by us in determining the issues here involved. We have considered all of the evidence in the case, the stipulated facts, the oral testimony of expert and non-expert witnesses, the documentary evidence, and based thereon we have reached the *31 conclusion that for gift tax purposes the value of the 1,000 shares of stock of the corporation on December 28, 1942, was $60 per share, and the value of the 500 shares on December 14, 1943, $70was per share, and we so hold. Decision will be entered under Rule 50.